**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RACHELANN YEGIAIAN,

        Plaintiff,

v.

CITY OF EASTPOINTE, and POLICE
OFFICER RANDY DIEGEL, LT.
RICHARD HARDY and OFFICER RICKY
HILL, in their individual capacities, jointly and
severally,

        Defendants.

CASE NO. 09-15056
HONORABLE DENISE PAGE HOOD

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF
EASTPOINTE, OFFICER RANDY DIEGEL, AND LIEUTENANT RICHARD HARDY'S
MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT RICKY HILL'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING DEFENDANTS CITY OF
EASTPOINTE AND HARDY**

**I.     INTRODUCTION**

      This matter is before the Court on Defendants City of Eastpointe, Officer Randy Diegel,

and Lieutenant Richard Hardy's Motion for Summary Judgment [Docket No. 52, filed on

January 14, 2011].[1]  This matter is also before the Court on Defendant Ricky Hill's Motion for

Summary Judgment [Docket No. 53, filed on January 14, 2011].  Plaintiff responded to both

motions in her response, filed April 4, 2011 [Docket No. 59].  Defendants City of Eastpointe,

Officer Randy Diegel, and Lieutenant Richard Hardy replied to Plaintiff's response on April 11,

_____

[1] Plaintiff does not oppose the Motion for Summary Judgment with respect to Defendant
City of Eastpointe ("Eastpointe").  The motion is GRANTED with respect to Eastpointe, and
Eastpointe is DISMISSED.

1

2011 [Docket No. 60].  On the same day, Defendant Officer Ricky Hill separately replied to

Plaintiff's response  [Docket No. 61].

## II.      STATEMENT OF FACTS

On March 13, 2007, Plaintiff Rachelann Yegiaian was at the Eastland Motel.  While she

was at the motel with Dennis Haskins, the nature of their relationship is contested and irrelevant

to the instant suit.  Plaintiff admits that she consumed three beers and a sip of Haskins' Crown

Royal at the motel on the day the incident occurred, but maintains that she was not intoxicated.

Pl.'s Dep. at 148-149.  According to Haskins' sworn testimony, Plaintiff and Haskins had a

discussion in which Haskins gave Plaintiff an ultimatum to either leave her husband, or she and

Haskins would go their separate ways.  Ex. B. to Defs.' Mot. for Summ. J, Dep. of Haskins at

70-71.   Although they did not fight or yell, Haskins decided to leave the motel room to "go for a

walk" and "think it over."  *Id*. at 70.  After Haskins left, Plaintiff left the room, apparently to see

how far Haskins had gone, and locked herself out of the room.  *Id.* at 71.  Plaintiff testified in a

deposition that she and Haskins had not had an argument, but Haskins left to go across to get

something to eat.  Pl.'s Dep. at 153-154.  Plaintiff alleges that she then went to the front desk in

an effort to obtain another key to the room, but her request was denied because the room was

rented in Haskins' name.  *Id.* at 154-155.  When she returned to the room , Plaintiff claims she

knocked on the door about four times to see if Haskins had returned while she was gone.  *Id.*

Elizabeth Ulinsky, who was also staying at the Eastland Motel on March 13, 2007, stated

that she heard a man and woman yelling and fighting outside of Room #9.  When she looked out

of the window, she saw a female "pounding on the door and yelling for approximately 30

minutes."  Ex. G to Defs.' Mot. for Summ. J., Aff. of Elizabeth Ulinsky.

2

Officer Diegel arrived at the motel, with his dog from the K-9 unit. The accounts of what occurred subsequently vary greatly. Plaintiff claims Officer Diegel waved her to the vehicle and asked what she was doing. She explained that he was locked out of her room, and had to wait for Haskins to return. Officer Diegel then offered her a seat in the car, in light of the motel being located in a bad area. He asked her for her name, and in response to her questions, informed her that she was not under arrest. Plaintiff further claims she was in the car for about forty-five minutes before she asked again if she was under arrest and demanded to be let out of the car. Officer Diegel said no, and Plaintiff yelled at him to let her out. Officer Hardy and Officer Hill arrived on the scene, and "the next thing [Plaintiff saw] was cement" and heard Haskins saying "don't kick her back like that anymore, she has a bad back." Pl.'s Dep. at 158-160, 163. Plaintiff claims that Officers Hill and Diegel pulled her out of the car by her head and threw her to the cement, where she fell face first and was kicked in the head, the back, and in her sides, punched in the face, kicked between her legs, hit in the head with flashlights, and knocked unconscious. Plaintiff states that she was bleeding from her mouth and ears, her nose was broken, and she woke "on a dirty floor in a cell." *Id.* at 163-185.

According to Officer Diegel, he was on his regular patrol when he observed Plaintiff pounding on a motel room door, "pounding on the door and screaming." Ex. A to Defs.' Mot. for Summ. J., Aff. of Officer Diegel. He noticed that she was unsteady, her speech was slurred, and she smelled of intoxicants. *Id.* When he asked her why she was pounding on the door, Plaintiff allegedly informed him that she was looking for matches. Plaintiff informed Officer Diegel that her identification was in the room next door, which was open, and consented to him entering the room. He directed Plaintiff to sit in the vehicle, where she began pounding on the

glass door.  Haskins arrived on the scene, introducing himself as Plaintiff's "boyfriend," and explained that Plaintiff was upset because they had been arguing.  Officer Hill arrived on the scene, in response to Officer Diegel's radio call for backup.  By Officer Diegel's account, while Plaintiff was pounding on the glass door of the vehicle, Officers Hill and Diegel warned her to stop her disorderly conduct or she would be arrested.  She screamed an expletive and continued banging on the vehicle's interior.  When Officer Diegel opened the car door to make an arrest, Plaintiff refused to comply.  She began kicking her feet, at which time Officer Diegel pulled her from the vehicle by the arm and placed her on the ground.  Plaintiff began "thrashing her arms and legs" and struggled before Officer Diegel was able to handcuff her and return her to the vehicle.  When taken to the station, Plaintiff would not comply with the booking procedure, but instead yelled and kicked Officer Diegel in the chin while she was being placed in her cell.  *Id.*

Haskins provides yet another version of the encounter.  Haskins testifies that, when he arrived, one police officer was already at the scene.  He saw Plaintiff knocking on the door, and observed an officer pull her away from the door by her hair.  When he tried to intervene as he saw the officer get "very physical with her," he was commanded to sit down.  After placing Plaintiff in handcuffs, the officer threw her in the car and slammed the door.  Haskins claims Plaintiff was not yelling, but asking why the officer was doing this to her because she had not done anything wrong.  The officer pulled her out of the car by her hair, slammed her on the cement, and kneed her in the back of the neck.  Plaintiff was out of the car for a minute or two before she was thrown back in the vehicle and driven away.

Based upon the events of March 13, 2007, Plaintiff brought this suit under 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth and Fourteenth Amendments and

deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.[2]

## III.   APPLICABLE LAW & ANALYSIS

### A.   Legal Standard for Summary Judgment

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the burden of showing no dispute as to any material issue.  *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).  A dispute must be evident from the evidence in order to deny such a motion.  Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence.  Fed. R. Civ. P. 56(e).  When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party.  *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).  To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).  Accordingly, a nonmovant "must produce

---

[2] During oral argument, Plaintiff withdrew her claim for deliberate indifference to a serious medical need.

evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380.

      B.      Excessive Force

      Defendants' first assert that Plaintiff's claims are barred by qualified immunity. Qualified immunity is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). Governmental officials are entitled to qualified immunity when their discretionary acts do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). The Supreme Court has set forth a two-part test to determine whether qualified immunity should attach. First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). If there is no such violation, the inquiry ends here. *Id*. If a violation can be adequately stated, the court next asks whether the right was clearly established. *Id*. Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted**."** *Id*. *Saucier* also provides that an official's reasonable mistake is still cloaked with immunity. *Id*. Plaintiff must show that the officers violated a right so clearly established that any official in Defendants' positions would

6

have understood that they were under an affirmative duty to refrain from such conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). In other words, Plaintiff must demonstrate that Defendants' conduct was objectively unreasonable in light of Plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999).

Whether force is excessive, and in violation of the Constitution, depends on the circumstances surrounding the arrest or detention and the use of force, and is determined by what a reasonable, prudent police officer would do in those circumstances. *See*, *e.g., Amarillo v. Langley*, 651 SW2d 906 (Tex App 1983). In order to state a claim of excessive force by law enforcement officials, a plaintiff must demonstrate a seizure occurred. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 (1998). "A seizure within the meaning of the Fourth Amendment, however, requires an intentional acquisition of physical control . . . [o]nly when there is a governmental termination of freedom of movement through means intentionally applied is the Fourth Amendment implicated." *Dunigan v. Noble*, 390 F. 3d 486, 492 (6th Cir. 2004). In the Sixth Circuit, "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009).

The Court is satisfied that a seizure occurred in this case, in that Plaintiff's freedom of movement was terminated when Plaintiff was in the police vehicle against her will. As to whether reasonable force was exercised, Defendants argue that Plaintiff's resistance necessitated Officer Diegel's actions and Plaintiff's version of the events is simply too incredible, and contrary to the record, to be accepted by the Court. Defendants point to obvious deficiencies in

7

Plaintiff's testimony to discredit her account of what occurred.

Plaintiff testified that she was beaten by Officers Diegel, Hill, and Hardy. However, Plaintiff does not offer any evidence disputing Defendant's assertion that Officer Hardy was at the police station when the incident occurred and could not have been present at the scene. Officer Hardy submitted an affidavit stating that he was working at the Eastpointe Police Station, and was not present at the time Plaintiff was arrested. Plaintiff has provided no evidence that would create a genuine issue of material of fact as to Officer Hardy's presence. Accordingly, summary judgment must be granted with respect to Officer Hardy, and Officer Hardy is dismissed.

Defendants' further argue that Plaintiff's allegations of having been beaten are contradicted by Haskins' testimony, as well as Plaintiff's own medical records. *See* Dep. of Dennis Haskins, Ex. F to Defs.' Mot. for Summary Judgment at 89, 95-96; *See* Plaintiff's Medical Records, Ex. I to Defs.'Mot. for Summ. J. Defendants argue that Plaintiff's complaints of neck and shoulder pain were preexisting. Defendants further attempt to discredit Plaintiff based upon her testimony regarding her relationship with Haskins, her alcohol consumption, her argument with Haskins, and her alleged injuries. *See* Defs.' Mot. for Summ. J. at 2-6.

The Court is not satisfied that Plaintiff's account so belies that record that Defendants' motions should not be evaluated in the light most favorable to Plaintiff. Plaintiff argues that her preexisting medical conditions were exacerbated by the force exerted by the officers. Contrary to Defendants' characterization that the notes of Plaintiff's treating physician, Dr. Sam Awada, limit the abrasions and contusions found upon her release from jail to her elbows and knees, Dr. Awada's treatment notes also include head and neck contusions. Ex. E to Pl.'s Brief, Dr. Sam

Awada's Medical Records.  Plaintiff also submits photographs of injuries to her body that could be consistent with the use of excessive force.  *See* Ex. F. to Pl.'s Brief.  The Court does not agree with Defendants' argument that Plaintiff's failure to include photographs of injuries to her "groin area" are conclusive proof that such injuries never existed.

Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether excessive force was used during Plaintiff's arrest, and whether the Defendant officers are entitled to qualified immunity.  Officer Hill argues that he had no involvement in Plaintiff's arrest, but was merely present at the scene.  However, based upon Plaintiff's testimony and viewing the evidence in the light most favorable to Plaintiff, Officer Hill's motion for summary judgment must also be denied.

## IV.    CONCLUSION

For the reasons stated above,

IT IS ORDERED that  Defendants City of Eastpointe, Officer Randy Diegel, and Lieutenant Richard Hardy's Motion for Summary Judgment [Docket No. 52, filed on January 14, 2011] is GRANTED IN PART (with respect to Defendant City of Eastpointe and Officer Richard Hardy) and DENIED IN PART (with respect to Officer Randy Diegel).

IT IS FURTHER ORDERED that Defendant Ricky Hill's Motion for Summary Judgment [Docket No. 53, filed on January 14, 2011] is DENIED.

IT IS FURTHER ORDERED that, as Plaintiff has withdrawn the claim of deliberate indifference to a serious medical need, it is DISMISSED.

s/Denise Page Hood

Denise Page Hood
United States District Judge

Dated:  August 18, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry

Case Manager

10